Argued and submitted February 19, affirmed June 25, 1997

Ronald CARIAS,
*Appellant,*

*v.*

STATE OF OREGON,
*Respondent.*

(9503-01693; CA A92361)

941 P2d 571

Garrett A. Richardson argued the cause and filed the brief for appellant.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

**DE MUNIZ, J.**

Petitioner appeals from the judgment denying his petition for post-conviction relief in which he alleged that he was denied adequate assistance of trial counsel. We affirm.

Petitioner was convicted of one count of delivery of a controlled substance arising from a drug buy made by an undercover officer. Petitioner was in the company of Brandy, a female juvenile. It was Brandy who handed the drugs to the officer and who had the money when arrested. At trial, petitioner testified, admitting that he was present when the officer purchased drugs from Brandy but denying that he negotiated the drug deal with the officer. At the post-conviction hearing, petitioner's trial counsel recounted that the officer had testified that he had engaged in conversation with petitioner that was specific in terms of drug dealing. Petitioner's trial counsel did not contact Brandy or call her as a witness at trial.

██ Petitioner assigns error to the trial court's denial of his petition for post-conviction relief, arguing that the trial court erred in finding that trial counsel's decision not to investigate the involvement of Brandy was a permissible "tactical" choice. In a post-conviction proceeding, the petitioner has the burden to prove the allegations of the petition by a preponderance of the evidence. ORS 138.620(2). Under the Oregon Constitution, to prove inadequate assistance of trial counsel, the petitioner must show that counsel failed to do the things reasonably necessary to advance the defense and that the petitioner suffered prejudice as a result. *Stevens v. State of Oregon,* 322 Or 101, 108, 902 P2d 1137 (1995). Denial of adequate assistance of counsel under the Sixth and Fourteenth Amendments is demonstrated when the petitioner shows that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 US 668, 687, 104 S Ct 2052, 80 L Ed 2d 674 (1984). On review of a denial of post-conviction relief, we are bound by the post-conviction court's findings supported by evidence in the record, but we examine anew the court's constitutional determinations. *Krummacher v. Gierloff,* 290 Or 867, 869, 627 P2d 458 (1981).

Petitioner argues that his position at trial was that he had no involvement in the drug transaction, and the state's theory was that he was acting in concert with Brandy. He contends that, as tried, the case was "a swearing contest" between him and the arresting officer. He argues that the state's theory could not have been sustained if trial counsel had established that Brandy was the one who negotiated the transaction but that counsel made no efforts to contact Brandy or anyone else in order to determine what had occurred during the encounter. He argues that trial counsel's omission requires reversal of the post-conviction judgment under *Mellem v. State of Oregon*, 106 Or App 642, 809 P2d 1348 (1991).

■ In *Krummacher*, the Supreme Court noted that standards for measuring ineffective assistance of counsel are necessarily general and a degree of subjectivity "cannot be avoided." 290 Or at 873. The most difficult assessments are those involving decisions made "in the course of representing a defendant at trial." *Id.* at 875. Counsel must investigate the facts and prepare on the law "to the extent appropriate to the nature and complexity of the case," *id.* at 875, but errors that are "inconsequential in the context of the entire trial" do not demonstrate inadequate assistance. *Id.* Each claim is assessed in the totality of the circumstances. *See id.* at 874 n 5.

■ At the post-conviction hearing, petitioner's trial counsel testified that he made no attempt to contact Brandy, explaining:

"Well, I thought that I was looking at it as a Hobson's choice there. What we had here in my evaluation was a 40-something year-old guy, defendant, and a 15-year-old, as it were defendant. I felt that if I had contacted her, she would have told me one of two things. She would have said, 'No, he didn't have anything to do with it.' I would call her as a witness in view of the—well, I'll get to that later, but I'd call her as a witness and either the District Attorney would have torn her up in cross examination by saying, 'You had really nothing to lose in this situation. You were a juvenile. You were not subject to the criminal justice system. He is your friend. You want to do what you can to help him.' Her motive, interest, and bias would have knocked her utility

out as a witness. The alternative situation would have been that I contact her and she would have said something to the effect that, 'Yeah, it was his dope. He just had me do the sale for him.' Then I would be in an ethical dilemma in terms of whether or not I could further represent my client. Neither of those two situations were very appealing to me.

"Q: Was [Brandy] represented?

"A: I don't know, Your Honor. My assumption was that she was. I didn't check that out.

"Q: What's been your experience with representing the folks who are representing, having their lawyers be willing to have them testify.

"A. Well, my experience is that I contact the attorneys and the attorneys indicate, no. I don't want my client subject to this type of interrogation or to be called as a witness."

The post-conviction court accepted counsel's explanation as a "tactical" decision. Petitioner contends that the failure to investigate was "a complete failure to exercise professional judgment[.]" *DeHart v. State*, 55 Or App 254, 258, 637 P2d 1311 (1981). He argues that the explanations given were the same kind of "gross generalization" that we rejected in *Mellem*. There, the petitioner had been convicted of forgery after she cashed a check. Her defense was that two other persons had the check and were going to repay money owed to her when it was cashed. She contended that she had no knowledge that the check had been stolen or that it was forged. Her trial counsel did not investigate the witnesses.

Because the witnesses were the petitioner's only defense, we concluded that the counsel's failure to verify the petitioner's story entitled her to a new trial. We reasoned:

"The state argues, and trial counsel testified, that his choice not to look for [the witnesses] was a reasonable tactical decision, because it was doubtful that they could be located; if located, they would likely refuse to testify; if they testified, they would not be believable. Reasonable tactical decisions generally cannot be made without some investigation or research. The decision not to call a witness or to put on certain evidence is, in the abstract, a tactical decision; but that characterization is not a complete answer to the question of adequate representation. A tactical decision

must have some kind of factual predicate. Consequently, professional skill requires at least an attempt to find out the facts before a final tactical decision is made.

"* * * * *

"It may well have been true, after investigation, that the people could not have been located or, if found, that their value to the defense would have been as counsel speculated that it would be. However, his conclusions were not based on any investigation but on generalizations about human conduct. We decline, in this case, to accept those generalizations as an adequate basis for decisions about representing petitioner." 106 Or App at 645-46.

Here, trial counsel assumed that Brandy's attorney would not allow her to testify (if, indeed, she was represented) and that if she did testify, her credibility would be destroyed on cross-examination. However, those assumptions did not arise from personal knowledge. Rather, as in *Mellem*, the assumptions alone determined counsel's decision not to call Brandy. As in *Mellem*, there was no factual predicate here to support trial counsel's tactical decision not to call Brandy as a witness.

We also reject trial counsel's explanation of a possible dilemma if Brandy had told him that the drugs were petitioner's. Trial counsel did not provide any explanation as to why, in this particular case, his fear was well-grounded. In many criminal settings, there is a possibility that the trial counsel might learn something during investigation that could create an ethical conflict. Because, in theory, such a conflict might arise does not, by itself, justify a complete failure to investigate.

We agree with petitioner that counsel's failure here to investigate was a failure to exercise reasonable professional skill and judgment. However, we do not agree with petitioner that proof of the omission, without more, requires reversal of the post-conviction judgment. Inadequate assistance of counsel requiring reversal requires a showing not only of an unreasonable failure or omission, but also that the omission prejudiced the defense. *See Trujillo v. Maass,* 312 Or 431, 435, 822 P2d 703 (1991). The Supreme Court made clear in *Krummacher*, 290 Or at 883, that only those acts or

omissions by counsel that have a tendency to affect the result of the prosecution can be regarded as of constitutional magnitude. Petitioner has the burden to prove the result of the omission reaches that magnitude.

Here, petitioner did not demonstrate how the failure to investigate resulted in a tendency to affect the result of his trial. Instead, he relies on *Mellem* for the proposition that, by itself, the failure to even try to contact Brandy requires post-conviction relief. Petitioner is correct that, in *Mellem*, we held that the failure to do anything to verify or corroborate the petitioner's story was a suspension of professional judgment that denied petitioner adequate representation and entitled her to a new trial. 106 Or App at 646. However, in so holding, we did not analyze what prejudice actually resulted. That was inconsistent with our earlier practice. *See, e.g. DeHart*, 55 Or App at 258 (at post-conviction, testimony of witnesses, which the petitioner's counsel did not investigate or present at trial, showed corroborating testimony that might have produced a reasonable doubt in the minds of the jurors). It was also contrary to Supreme Court instruction.

For example, in *Stevens*, the petitioner had been convicted of sexually abusing a 12-year-old girl who testified that she had reported the rape to one of her teachers the same day. 322 Or at 103. The petitioner's trial counsel had not interviewed complainant's teachers or classmates and had not investigated the petitioner's claim that he was impotent. At the post-conviction hearing, petitioner presented testimony of the teacher, classmates and a urologist. *Id.* at 106.

The court concluded that the counsel had failed to exercise reasonable professional skill and judgment when he did not investigate the witnesses. *Id.* at 110. The court did not hold, however, as we did in *Mellem*, that that failure, without more, entitled the petitioner to a new trial. Rather, it evaluated what effect the evidence might have had, *id.*, and concluded that the evidence of the disinterested witnesses would have called into question the credibility of the complaining witness. Thus, the counsel's failure to interview the witnesses warranted post-conviction relief. *Id.* In the light of the analysis in *Stevens*, we expressly disavow the suggestion in *Mellem* that a petitioner in a post-conviction proceeding is

entitled to post-conviction relief only on a showing of a trial counsel's failure to investigate.

Petitioner here provided no evidence by affidavit, testimony or otherwise as to what Brandy's testimony would have been so as to allow an evaluation of the likely effect of that testimony at trial. There is no evidence that Brandy would have been available to testify[1] or that she would have corroborated petitioner's account as opposed to supporting the state's theory. Petitioner did not show that the failure to investigate resulted in prejudice to his defense, and the post-conviction court did not err in denying his petition for post-conviction relief.

Affirmed.

---

[1] In contrast, in *Mellem*, on post-conviction, the petitioner offered testimony from a private investigator that the witnesses could have been located close to the time that the crime occurred.