Argued and submitted June 20, reversed September 8, 2005

STEVEN RAY SMITH,
*Respondent,*

*v.*

STATE OF OREGON,
*Appellant.*

C011041CV; A123855

119 P3d 801

Steven R. Powers, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

No appearance for respondent.

Before Landau, Presiding Judge, and Brewer,* Chief Judge, and Ortega, Judge.

ORTEGA, J.

---

* Brewer, C. J., *vice* Richardson, S. J.

## ORTEGA, J.

The state appeals a judgment granting petitioner post-conviction relief. The post-conviction court determined that petitioner received inadequate assistance of counsel in the trial that led to his conviction on three counts of sexual abuse in the third degree. The state contends that the post-conviction trial record lacks the required showing that petitioner's counsel's allegedly inadequate performance had a tendency to affect the outcome of petitioner's criminal trial. We agree and, consequently, reverse.

A jury found petitioner guilty of three of four charged incidents of sexual abuse in the first degree. ORS 163.427(1)(a). The incidents occurred when the child victim was 10 years old, but she did not report them until she was 20, when she sought help from a counselor. The counseling prompted the victim to tell her mother about the abuse and to report it to local authorities.

On the morning of the first day of petitioner's criminal trial, the prosecutor gave petitioner's trial counsel a child abuse intake form containing the police report of the police department's first contact with the victim. The form stated that the victim had contacted Deputy Thompson over the weekend, and the deputy had told her to call "A. Cattron" to report the incident. The form then summarized the victim's statements to Detective Cattron, who filled out the form, before the case was ultimately assigned to a different detective, Oswald, for full investigation.

Petitioner's trial counsel chose not to discuss the form with the prosecutor or court until the second day of trial at the noon recess, after hearing the victim's testimony. Counsel acknowledged that the prosecutor's delay in disclosing the form had been inadvertent and noted that at first he had thought that the report did not seem to be "anything that would interfere with the trial going forward." But when it turned out that the victim's testimony was inconsistent with what was summarized in the intake form, petitioner's trial counsel sought a continuance in order to locate Deputy Thompson, thinking that perhaps the victim's testimony might differ significantly from "the testimony of Deputy

Thompson who did the initial intake interview." The court told trial counsel to begin his search and report back on the status of the search after the lunch recess.

As trial counsel's statements and actions above indicate, he had misread the form, consequently searching for Thompson (the initial contact) rather than Cattron (who actually took and recorded the victim's statement). Even after trial counsel's error was pointed out by the prosecutor after the lunch hour, however, trial counsel did not ask for another continuance to locate Cattron. As a result, petitioner's case was tried without Cattron's testimony. Petitioner appealed his conviction, and this court affirmed without opinion. *State v. Smith*, 164 Or App 319, 991 P2d 66 (1999).

Petitioner then brought this action for postconviction relief, alleging that various deficiencies in criminal trial counsel's performance denied him constitutionally adequate assistance. The post-conviction court rejected all of petitioner's claims except the one addressed here: that his criminal trial counsel was deficient by not reading the intake form correctly and by failing to request a continuance after the lunch hour to locate, question, and subpoena Cattron to testify at trial about the victim's inconsistent statements.

In the intake form, Cattron reported the following statement by the victim:

> "Over an approx. 6 to 7 month period, Smith abused her by putting his hands under her shirt and down her pants. He did penetrate her vaginally with his fingers on at least one occasion and made her touch his penis. This abuse occurred approx. 7 times."

Petitioner argued in the post-conviction proceeding that the victim's statements as reflected on the form were inconsistent with the victim's trial testimony, in which she recalled four "specific incidents" of petitioner "touching private areas" of her body. Petitioner also argued that the statements in the form were inconsistent with Detective Oswald's testimony, in which he recalled the victim stating in the course of his interview of her that petitioner "touched her on her private parts" five or six times total. Because those inconsistencies called

the victim's credibility into question, petitioner asserts, his counsel's failure to obtain impeachment testimony from Cattron necessarily had a tendency to affect the outcome of his criminal trial. The post-conviction court agreed[1] and granted petitioner relief in the form of a new trial.

■     On appeal, the state contends, among other things, that petitioner failed to demonstrate that his trial counsel's failure to investigate Cattron had any tendency to affect the outcome of his criminal trial. Because we agree with that contention, we conclude that petitioner was not entitled to post-conviction relief, and hence we need not reach the state's alternative arguments.

■ ■     The principles that govern a claim of inadequate assistance of counsel, as applicable to this case, are well settled. Under Article I, section 11, of the Oregon Constitution, petitioner must show that his counsel failed to exercise the reasonable professional skill and judgment " 'necessary to diligently and conscientiously advance the defense' " and that " 'petitioner suffered prejudice as a result.' " *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995) (quoting *Krummacher v. Gierloff*, 290 Or 867, 874, 627 P2d 458 (1981), and *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991)). In the context of a post-conviction relief claim, "prejudice" means that counsel's acts or omissions had "a tendency to affect the result of the prosecution." *Stevens*, 322 Or at 110. Similarly, to establish inadequate assistance of counsel under the Sixth Amendment to the United States Constitution, petitioner must prove that counsel's assistance was unreasonable and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 US 668, 684, 694, 104 S Ct 2052, 80 L Ed 2d

---

[1] The post-conviction court explained its reasoning this way:

"Surely, if [the victim] made such a statement [regarding the number of times of alleged abuse] to [D]etective Cattron, and then denied such an incident to [D]etective Oswald and the jury, that would cause the jury to question her story. That is not a small discrepancy. It is not something an abuse victim is likely to be mistaken about or forget. A reasonable trier of fact would wonder, if her story changed so dramatically, especially after many years had passed between the remembered incidents and the retelling, just how much was true and how much was the product of imagination, faulty memory, or some other source of false allegation."

674 (1984). The post-conviction court here ruled that petitioner was entitled to relief under the Oregon Constitution, but not the federal constitution. Reviewing the post-conviction court's legal conclusions for errors of law,[2] we reverse.

We assume without deciding that, had petitioner's counsel exercised the reasonable professional skill and judgment necessary to diligently and conscientiously advance petitioner's defense, he would have sought the opportunity to at least question Cattron about the victim's statements reported in the intake form, which were inconsistent with her trial testimony. Accordingly, we begin by considering whether petitioner proved that counsel's failure to request a continuance had a "tendency to affect the result of the prosecution," entitling petitioner to relief under the Oregon Constitution.

In *Stevens*, the petitioner successfully established that his criminal trial counsel's failure to locate and investigate certain witnesses had a tendency to affect the outcome of the petitioner's criminal trial by presenting the omitted testimony of the witnesses at the post-conviction hearing. 322 Or at 110. There, because the omitted testimony came from disinterested witnesses and included "highly valuable impeaching evidence * * * that would have called into question pivotal testimony of the complaining witness," the petitioner demonstrated that he was entitled to post-conviction relief. *Id*.

Not so here. Petitioner did not demonstrate how his counsel's failure to request a continuance would likely have affected the result of his trial; he provided no evidence of what Cattron's omitted testimony would have included and did not establish that Cattron would even have been available to testify. Absent such evidence, petitioner does not provide a basis on which we could conclude that evidence was omitted that might have assisted in his defense. *See New v. Armenakis*, 156 Or App 24, 28-29, 964 P2d 1101 (1998), *rev den*, 328 Or 594 (1999) (absent an affidavit from the witness

---

[2] *See* ORS 138.220; *Ashley v. Hoyt*, 139 Or App 385, 391, 912 P2d 393 (1996).

indicating that his omitted testimony would have been favorable to the petitioner, the record lacked the requisite showing of prejudice to support an award of post-conviction relief for counsel's failure to present that witness); *Carias v. State of Oregon*, 148 Or App 540, 545-47, 941 P2d 571 (1997) (same, noting also the failure to demonstrate that the witness would have been available to testify). Because petitioner did not demonstrate that his counsel's failure to request a continuance tended to affect the result of his criminal trial, the post-conviction court erred in granting petitioner post-conviction relief.

The same result follows under the Sixth Amendment to the United States Constitution. For the reasons we have discussed, we conclude that petitioner did not show that there was a reasonable likelihood that the result of the proceeding would have been different but for counsel's allegedly unprofessional errors. *See Strickland*, 466 US at 688, 694. Accordingly, federal law does not provide an alternative basis for upholding the post-conviction court's award of post-conviction relief to petitioner.

Reversed.